James A. Kohl, Esq.
NV Bar No. 5692
**Howard & Howard, PLLC**
3800 Howard Hughes Pkwy.
Suite 1400
Las Vegas, NV 89169
(702) 257-1483
jak@h2law.com
Attorney for Plaintiff

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>SILVER CLUB, a Nevada corporation, *et al*<br><br>Debtors. | Case No.:  BK-N-09-51953-GWZ<br>Chapter 11, Jointly Administered with:<br>09-51956  Parker's Model T, Inc.<br>09-51958  The Holder Group El Capitan, Inc.<br>09-51961  The Holder Group Elko, LLC |
| KONAMI GAMING, INC., a Nevada corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>NORTHERN NEVADA ASSET HOLDINGS, LLC, a Nevada limited liability company, HOLDER HOSPITALITY GROUP, INC., a Nevada corporation, SILVER CLUB, a Nevada corporation, PARKER'S MODEL T, INC., a Nevada corporation, THE HOLDER GROUP EL CAPITAN, INC., a Nevada corporation, THE HOLDER GROUP ELKO, LLC, a Nevada limited liability company,<br><br>          Defendants. | ADVERSARY NO. _____ |

561151 v8

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

**NOW COMES** the Plaintiff, Konami Gaming, Inc. ("**Konami**"), by its attorneys Howard & Howard Attorneys PLLC, and for its Complaint for Declaratory Judgment and other relief states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Konami is a Nevada corporation with its main office and headquarters located at 585 Trade Center Drive, Las Vegas, Nevada 89119-3720.

2. Upon information and belief, Non-Debtor Defendant Northern Nevada Asset Holdings, LLC ("**NNAH**") is a Nevada limited liability company with its main office and headquarters located at 1515 N. Academy Boulevard #400, Colorado Springs, Colorado, 80909. Upon information and belief, NNAH is duly authorized to conduct business in this jurisdiction and, at all times relevant to this action, has conducted business in this jurisdiction

3. Upon information and belief, Non-Debtor Defendant Holder Hospitality Group, Inc. ("**Hospitality**") is a Nevada corporation with its main office and headquarters located at 1040 Victorian Avenue, Sparks, Nevada 89431.

4. Upon information and belief, Debtor Defendant Silver Club ("**Silver Club**") is a Nevada corporation with its main office and headquarters located in Washoe County, Nevada.

5. Upon information and belief, Debtor Defendant Parker's Model T, Inc. ("**Parker's Model T**") is a Nevada corporation with its main office and headquarters located in Humboldt County, Nevada.

6. Upon information and belief, Debtor Defendant The Holder Group El Capitan, Inc. ("**El Capitan**") is a Nevada corporation with its main office and headquarters located in Humboldt County, Nevada.

7. Upon information and belief, Debtor Defendant The Holder Group Elko, LLC ("**Elko**") is a Nevada corporation with its main office and headquarters located in Elko County, Nevada. Elko, Silver Club, Parker's Model T, and El Capitan, shall be referred to herein collectively as the "**Debtors**."

8. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334(b)

9. Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

10. This adversary proceeding and the causes of action herein constitute "core" proceedings within the meaning of 28 U.S.C. § 157(b)(2)(G), (K), and (O). This is an adversary proceeding as defined by Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

A.  **Konami's Agreements with Hospitality**

11. On or about February 28, 2006, Konami and Hospitality entered into a System Purchase & License Agreement ("**System Agreement**"), a true and complete copy of which is attached hereto as **Exhibit A**.

12. Under the System Agreement, Hospitality agreed to purchase the Konami Casino Management System ("**System**"), an on-line slot metering system comprised of certain equipment and other personal property (collectively, the "**Equipment**") and a site-specific non-exclusive license ("**License**") to use the System software ("**Software**") at certain casinos in Nevada, including Charlie Holder's Casino, El Capitan Casino, Fernley Truck Inn, Model T. Hotel Casino, Red Garter Hotel Casino, Scoreboard Sports Lounge, Sharkey's Casino, Silver

Club Hotel Casino, Stockmen's Hotel Casino Commercial Casino, Sundance Hotel Casino, Wig Wam Casino (collectively the "**Casinos**").[1]

13. The total cash consideration for the Equipment and the License was $5,138,933.13. Under the terms of the System Agreement, Hospitality paid $254,037.50 upon execution of the System Agreement, and promised to pay $762,112.50, plus interest at a rate of 12 percent per annum, in 11 equal installments of $73,827.33, beginning on the first day of April 2006 and continuing on the first day of each month thereafter until paid in full.

14. The remaining balance of the total purchase price was to be paid by Hospitality in 24 equal principal installments commencing on the first day of the month following the date when the Equipment for that Casino was accepted, and continuing each month thereafter for 12 months on an interest-free basis and then for the next 12 months at an interest rate of eight percent per annum until the applicable balance of the total purchase price for that Casino was fully paid. (System Agreement, ¶ 3.A. at 1-2.) Hospitality agreed that title to all forms of intellectual property embedded in the goods sold remained with Konami. (*Id.* ¶ 6, at 2; *id.*, Sched. E. ¶¶ 3.2 & 4.1 at 1-2.)

15. On or about February 28, 2006, Holder Hospitality and Konami entered into a System Maintenance and Support Agreement ("**Support & Maintenance Agreement**"), a true and complete copy of which is attached hereto as **Exhibit B**. Under the Support & Maintenance Agreement, Konami was engaged to provide maintenance and support for the System at the Casinos.

---

[1] For various reasons after entering in the System Agreement, the parties agreed to omit Charlie Holder's Casino and the Fernley Truck Inn from the locations where the System would be installed. In addition, to the best of Konami's knowledge, the Wig Wam Casino, Charlie Holder's Casino and the Fernley Truck Inn are no longer owned by any Holder entity. Konami was notified by Hospitality that the Silver Club closed down operations earlier this year, and that the Equipment that was primarily used at the Wig Wam is currently stored at the Silver Club.

16. Both the System Agreement and the Support and Maintenance Agreement (collectively the "**Agreements**") are between Konami and Hospitality, only.

17. None of the Debtors is a party to either of the Agreements. None of the Debtors is in privity with Konami.

B. **Konami's Pre-Petition Termination of the License**

18. On June 27, 2008, Konami notified Hospitality that it was in material breach of the System Agreement due to its failure to make timely payments. A true and complete copy of the June 27, 2008 notice is attached as **Exhibit C**.

19. Hospitality failed to timely cure the breaches that Konami identified in writing. Accordingly, Konami notified Hospitality on October 14, 2008 that it (Konami) was immediately terminating the License for the use of the Software and suspending support and maintenance services to the Casinos. (*See* October 14, 2008 Notices, true and complete copies of which are attached as **Exhibit D**.) Konami demanded immediate payment of the arrearage under the System Agreement in the approximate amount of $3.04 million. (*See id.*)

20. Over the following months, Konami and Hospitality negotiated a forbearance of the exercise by Konami of its rights and remedies under the Agreements. During these negotiations, Hospitality introduced NNAH to Konami as a potential suitor for the acquisition of Hospitality's assets.

21. In express reliance upon the representations made to Konami, Konami did not turn off the System or otherwise enforce its legal rights. Over the course of these negotiations, Konami had been advised and/or led to believe (a) that discussions were underway regarding a possible sale of one or more of the Casinos, (b) that NNAH desired to purchase some of the

Casinos and (c) that NNAH was interested in funding the continued operation of the System. Upon information and belief, that these representations were either overstated or untrue.

22. In late February 2009 and early March 2009, Hospitality and Konami negotiated the return of certain equipment in exchange for a credit against arrearages owed under the System Agreement and a waiver of support and maintenance fees under the Support & Maintenance Agreement for the period running from November 2008 through February 2009. Those negotiations resulted in an understanding between the parties that was confirmed by letter dated March 12, 2009, a true and complete copy of which is attached as **Exhibit E**. After taking into account the promised performance by Hospitality (and resulting credits), the arrearage under the System Agreement comes to the current approximate outstanding amount of $2.4 million.

23. Upon information and belief, in May 2009, NNAH commenced a state court action for the appointment of a receiver over the Debtors in the Second Judicial District Court, Washoe County, Nevada (the "**Receiver Action**"). Neither NNAH, Hospitality or any of the Debtors (or any person acting on behalf of any of the foregoing) disclosed the commencement of the Receiver Action to Konami. Indeed, Konami first learned of the Receiver Action shortly before the hearing on the appointment of the receiver.

24. On June 19, 2009 (the "**Petition Date**"), each of the Debtors filed its respective voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.

### COUNT I (DECLARATORY JUDGMENT REGARDING THE DEBTORS' LACK OF AN INTEREST IN THE AGREEMENTS, THE LICENSE AND THE KONAMI INTELLECTUAL PROPERTY)

25. Konami realleges the preceding allegations as though fully set forth herein.

26. None of the Debtors is a party to either the System Agreement or the Support & Maintenance Agreement.

27. None of the Debtors is in privity with Konami under either the System Agreement or the Support & Maintance Agreement.

28. Accordingly, none of the Debtors has any interest, legal or equitable, in either of the Agreements.

29. Because the License and the right to use the Software arises under the System Agreement, none of the Debtors have any interest, legal or equitable, in the either the License or the Software.

30. There is no agreement between Konami and any of the Debtors that would give any of the Debtors any interest, legal or equitable, in any other Konami intellectual property that may be in the possession of any of the Debtors (collectively, "**Konami Intellectual Property**").

WHEREFORE, Konami requests that:

A. This Court enter a judgment against each of the Debtors, declaring such Debtor does not have any interest, whether legal or equitable, in any of the following property and therefore, declare that none of the following is property of the estate of any of the Debtors:

    1. either of the Agreements;

    2. either the License or the Software; and

    3. the Konami Intellectual Property;

B. This Court enter a judgment against each of the Debtors, declaring that the automatic stay does not apply to prevent Konami from enforcing its rights and pursuing its remedies, against any and all non-debtors, including, without limitation, Hospitality and Harold

D. Holder, Sr., under the Agreements and with respect to each of the License, the Software and Konami Intellectual Property; and

  C.  This Court grant such further and other relief that the Court deems appropriate.

### COUNT II (DECLARATORY JUDGMENT REGARDING THE TERMINATION OF THE LICENSE)

31. Konami repeats and realleges the preceding allegations as though fully set forth herein.

32. Even if any of the Debtors had some interest in the License, Konami validly terminated the License prior to the Petition Date.

WHEREFORE, Konami alternatively requests that this Court a judgment against each of the Debtors, declaring that the License was validly terminated prior to the Petition Date and, therefore, declare that it is not property of the estate of any of the Debtors and that the automatic stay does not apply to prevent Konami from enforcing its rights and remedies with respect to the License including, without limitation, turning off the System. Konami also requests that this Court grant such further and other relief that the Court deems appropriate.

### COUNT III (EQUITABLE ESTOPPEL)

33. Konami repeats and realleges the preceding allegations as though fully set forth herein.

34. Through the affirmative misrepresentations and material factual omissions of Hospitality and the Debtors, Konami was misled regarding the status of the negotiations between NNAH and the Debtors concerning a sale of Hospitality's and the Debtors' businesses to NNAH.

35. Konami actually and reasonably relied, to its detriment, on these affirmative statements and omissions in forbearing to exercise its rights under the License and the Agreements.

36. It would be inequitable for NNAH to profit from the misrepresentations and material omissions of Hospitality and the Debtors.

37. Each of NNAH, Hospitality and the Debtors should be equitably estopped from claiming that either the License or either of the Agreements was not terminated prior to the Petition Date.

WHEREFORE, Konami requests that this Court rule that NNAH, Hospitality and the Debtors, and any combination of the foregoing, are equitably estopped from claiming that Konami validly terminated the License prior to the Petition Date. Konami also requests that this Court grant such further and other relief that the Court deems appropriate.

**COUNT IV (DECLARATORY JUDGMENT DETERMINING THAT NNAH HAS NO LIENS UPON THE AGREEMENTS, THE LICENSE, THE SOFTWARE OR THE KONAMI INTELLECTUAL PROPERTY)**

38. Konami realleges the preceding allegations as though fully set forth herein.

39. NNAH has asserted that it is the holder of a perfected security interest in all of the personal property in which the Debtors have an interest, including the Agreements, the License, the Software and the Konami Intellectual Property (collectively, the "**Disputed Collateral**").

40. It is axiomatic that a debtor cannot grant a security interest in property as to which it has no legal or equitable right.

41. When the Court grants some or all of the relief requested in Counts I through III above, NNAH will not have a lien on some or all of the Disputed Collateral.

561151 v8    9 of 11

42. Alternatively, under applicable federal law, neither Hospitality nor any of the Debtors may transfer any interest in the License, in the Software or in the Konami Intellectual Property without Konami's prior express consent.

43. Konami has not and does not consent to the transfer of any such interest, by grant of consensual lien or otherwise, to NNAH.

WHEREFORE, Konami requests that:

A. This Court enter a declaratory judgment against NNAH, declaring that NNAH does not have any lien upon or security interest in any of the Disputed Collateral;

B. In the alternative, this Court enter a declaratory judgment ruling that NNAH does not have any lien upon or security interest in any of the License, the Software and the Konami Intellectual Property; and

C. This Court grant such further and other relief that the Court deems appropriate.

## COUNT V (REQUEST FOR RELIEF FROM THE AUTOMATIC STAY)

44. Konami realleges the preceding allegations as though fully set forth herein.

45. Upon information and belief, some or all of the Debtors are in possession of property belonging to Konami including, without limitation, the Konami Intellectual Property, to which said Debtor or Debtors has or have no legal or equitable right.

46. Any continued possession of Konami's property by any of the Debtors was and is the product of the inequitable conduct on the part of some or all of the Debtors, or persons or group of persons acting on their behalf or at their direction.

47. Some or all of the Debtors and/or their non-debtor affiliates have benefited from the continued use of Konami's property without compensating Konami for this continued use.

48.  **For over eight months**, the Debtors and/or their non-debtor affiliates have reaped this benefit without Konami receiving the required payments under the System Agreement. Equity favors either return of Konami's property or *full* payment to Konami for its continued use.

49.  Pursuant to 11 U.S.C. § 362(d), cause exists to grant Konami relief from the automatic stay so that it may recover the property wrongfully in the possession of the applicable Debtor.

WHEREFORE, Konami requests that this Court enter an Order granting Konami relief from the automatic stay so it may exercise its right of repossession with respect to any and all of its property that is wrongfully in the possession of any of the Debtors, waiving the 10-day stay period pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, and granting Konami such further and other relief that the Court deems appropriate.

DATED: September _____, 2009.

Howard & Howard Attorneys PLLC

/s/ *James A. Kohl*
James A. Kohl, Esq.
NV Bar No. 5692
Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway
Suite 1400
Las Vegas, NV 89169
(702) 257-1483
jak@h2law.com

# # #

561151 v8                                11 of 11